**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NANCY MURRAY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 05 C 1229 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| GMAC MORTGAGE CORPORATION ) | |
| d/b/a DITECH.COM ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nancy Murray ("Murray" or "Plaintiff") has brought suit on behalf of a now-certified class of consumers against GMAC Mortgage Corporation d/b/a Ditech ("GMACM" or "Defendant") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq* ("FCRA"). Before this Court is Defendant's Motion for the Court to Consider New Supreme Court Authority in Support of Summary Judgment and Certification for Immediate Appeal (Doc. No. 112). For the reasons stated below, this motion is GRANTED in part and DISMISSED AS MOOT in part.

**1. FACTS**

The facts of this case were outlined in this Court's summary judgment opinion dated April 10, 2007. It is therefore unnecessary to repeat that description in its entirety. For present purposes, it is sufficient to state the following. Defendant GMACM is a residential mortgage lender that uses direct mailings to attract new customers. Defendant sent a nationwide mailing to 10,071,186 people between October 15, 2004 and April 14, 2005, which Plaintiff maintains

-1-

failed to meet the requirements of FCRA. Specifically, Plaintiff claimed that the terms were not laid out in a properly "clear and conspicuous" manner as required by section 1681m(d), nor did the mailing amount to a "firm offer" that would justify the use of recipients credit scores under the permissible use exception of section 1681b(c). Defendant has shown that it used external agencies to assemble the list of recipients and develop the mailer in question, and received advice from internal associate legal counsel Peter Hender, compliance manager Shanna Gilroy, and production marketing director Peggy Knauft as to FCRA compliance.

In a ruling dated April 10, 2007, this Court denied in part and granted in part Defendant's motion for summary judgment, and granted Plaintiff's motion for class certification. This Court subsequently denied Defendant's motion to reconsider the partial denial of summary judgment. Following that ruling, the Supreme Court issued its opinion in *Safeco Ins. Co. of America, et al. v. Burr, et al.*, 551 U.S. 1, 127 S.Ct. 2201 (2007). In *Safeco*, the Supreme Court interpreted the same wilfulness standard upon which FCRA liability is based in this case (15 U.S.C § 1681n), though the underlying FCRA requirement was a different one (15 U.S.C. § 1681m(a) rather than 15 U.S.C. § 1681b(c)(1)(B)). Defendant now argues that this Court should reconsider its denial of summary judgment based on Defendant's claim that willfulness cannot lie under the standard established in *Safeco*. In the alternative, Defendant argues that it should be allowed to immediately appeal this issue to the Seventh Circuit, in light of the importance of interpreting the new Supreme Court ruling and the likelihood of settlement should this action move forward.

2.      **LEGAL STANDARD ON MOTION TO RECONSIDER**

The standards for evaluating a motion to reconsider are discrete and limited. Such a motion will only be granted:

> where the court has patently misunderstood a party, or has made a
> decision outside the adversarial issues presented to the Court by the
> parties, or has made an error not of reasoning but of apprehension. A
> further basis for a motion to reconsider would be a controlling or
> significant change in the law or facts since the submission of the issue to
> the Court. Such problems rarely arise and the motion to reconsider should
> be equally rare.

*See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

**3.    ANALYSIS OF MOTION TO RECONSIDER**

Defendant is correct that *Safeco* concerns the same basic standard of liability to be used in evaluating parties' interpretations of FCRA. *See* 15 U.S.C. § 1681n (establishing a common standard of private-action liability for all violations of the law). This Court must now consider whether summary judgment was appropriate in light of the Supreme Court's reframing of FCRA language regarding willfulness.

    a.    <u>Summary of *Safeco* Holdings</u>

In *Safeco*, the Court considered 15 U.S.C. § 1681a(k)(1)(B)(I), which requires that consumers be advised whenever there is "an increase in any charge for...any insurance" as a result of a credit report. Defendants had interpreted this language as applying only to ongoing customers, rather than new customers, assuming that it would be impossible to "increase" the rates or charges on those who had never before been charged. As a result, the *Safeco* Defendants did not provide the required FCRA notice to new customers who were given substandard terms as a result of their credit reports. The Court disagreed with Defendants' interpretation of section 1681a(k)(1)(B)(I) and, after a lengthy analysis of FCRA's history and purpose, found that FCRA did require that notice be given.

However, because the statutory language was "less-than-pellucid" on this point, and in light of "a dearth of guidance" on interpreting that language, the Supreme Court found that Defendants had not acted "willfully" in interpreting section 1681a(k)(1)(B)(I) incorrectly. In making this determination, the Court made several important points. With respect to the "willful" standard for liability under Section 1681n, the Supreme Court found that willfulness for FCRA purposes can be founded on either a knowingly wrong or a reckless basis. *Safeco*, 551 U.S. at 6-10. It then established a two stage process for determining whether or not a party's interpretation was reckless: first, the reading of the statute must have been objectively unreasonable; and second, in making that unreasonable determination the party must have run "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 18-21.

The Supreme Court focused on several different factors in determining that the Safeco Defendant's interpretation "was not objectively unreasonable":

> **-Reasonableness of Defendants' rationale based on statutory text**: "On the rationale that 'increase' presupposes prior dealing, Safeco took the definition as excluding initial rate offers for new insurance, and so sent no adverse action notices to Burr and Masey. While we disagree with Safeco's analysis, we recognize that its reading has a foundation in the statutory text."
>
> **-Likelihood that Defendant's interpretation would convince a court:** whether Defendant's rationale is "founded on a sufficiently convincing justification to have persuaded the District Court to adopt it and rule in Safeco's favor."
>
> -**Absence of judicial or administrative guidance:** "Before these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the Federal Trade Commission."

*Id.* at 20-21.  Based on the above factors, the Supreme Court determined that Safeco's interpretation was not objectively unreasonable, and that it was therefore unnecessary to consider the more difficult line-drawing determination of whether or not the defendant "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Id.* at 19-20.

Defendant filed this motion in the hopes that this Court would reconsider its denial of Defendant's motion for summary judgment and find that, as a matter of law, it is impossible for a reasonable jury to find willfulness in their failure to interpret FCRA's firm offer requirement correctly.  It should be noted that the underlying interpretive question in *Safeco* was significantly more straightforward; there, the question was whether or not 1681m(a) applied to new customers – a yes or no determination – while the instant case centers on the mailer contents required in order to qualify as a firm offer of credit under 1681b(c)(1)(B).  That said, *Safeco* nonetheless provides the courts with a general framework and some guideline considerations for considering whether a party has been reckless in its interpretation of a FCRA requirement sufficient to warrant liability under section 1681n.  First, *Safeco* requires a threshold determination of whether or not GMACM's interpretation of 1681b(c)(1)(B) was objectively unreasonable based on the clarity of the statutory text, the availability of judicial or administrative interpretation of that text, and the likelihood of judicial agreement with that determination.  Second, if the interpretation was objectively unreasonable, it must then be determined whether Defendant's error amounted to recklessness, or mere carelessness or negligence.

### b. Whether GMACM's interpretation was objectively unreasonable

It must be said at the outset of this analysis that GMACM's interpretation of FCRA's "firm offer" language is not entirely clear from its memorandum in support of its motion to reconsider. Defendant repeatedly claims that its "interpretation of the FCRA has found support in other courts," and that "numerous courts to this day continue to render decisions that tend to demonstrate that GMACM did not violate the FCRA in this case." *See, e.g.*, Recons. Mot. at 7. However, in this filing Defendant largely focuses on interpretive points that are not in question in this case, rather than laying out and defending its interpretation of FCRA. *See* Recons. Mot. at 7-8. For example, Defendant argues that particular terms such as interest rate and repayment period are not required, despite the fact that this is not in contention. *See* Summ. J. Op. at 20 ("[T]he line around 'firm offers' cannot be solely determined by the presence of [sic] absence of terms such as total loan amount, or the rate of interest, or the term of repayment."). Similarly, Defendant argues that conditions are allowed under FCRA, which this Court has already acknowledged. *See id.* at 18 ("While some of the additional conditions are expressly allowed under FCRA...the number and opacity of the conditions make the offer elusory..."). It is not necessary to evaluate these interpretive points for reasonableness.

To clarify, what is at issue is whether Defendant was objectively reasonable in believing that, where an offer "will be honored if the consumer is determined...to meet the specific criteria used to select the consumer for the offer," *see* Summ. J. Mem. at 2 (citing 15 U.S.C. §1681a(l)), it constitutes a "firm offer" despite the lack of *any* terms and the presence of *a multitude* of *opaque* conditions. Essentially, Defendant adopted the interpretation of "firm offer" later rejected by the Seventh Circuit in *Cole*; that whether or not the offer would have been honored is

dispositive, regardless of the amount of information provided or conditions attached to the offer. *See Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 727-28 (7th Cir. 2004) ("To determine whether the offer of credit comports with the statutory definition, a court must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the "offer" was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit.") (emphasis in the original).

### i. Reasonableness of Defendants' rationale based on statutory text

Like the text under consideration in *Safeco*, the FCRA language regarding the "firm offer" requirement is "less-than-pellucid." FCRA defines a firm offer as:

> any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more of the following: [list of acceptable conditions]

15 U.S.C. § 1681a(l). Defendant is therefore correct in its assertion that the statute does not outline specific terms that a firm offer must contain. *See* Recons. Mem. at 5-6. However, a firm offer is at heart an offer, and it is not entirely clear what can be "honored" if a mailer contains no information regarding the nature of the credit being offered. Also, according to the statutory scheme of FCRA it seems natural to require those accessing credit reports to provide some information in the resultant mailer to warrant that access. *See Cole*, 389 F.3d at 726-27.

In excluding essentially all substantive offer information from its mailer, Defendant arguably followed the letter of the law without adopting its spirit. Nonetheless, whether or not Defendant may have erred in interpreting FCRA does not determine whether that interpretation

was "reasonable." Defendant has asserted that the language in question carries no explicit requirement of terms and allows for conditions. This is reasonable. Indeed, other courts have found that the Seventh Circuit's *Cole* opinion – requiring more – inappropriately added additional requirements that simply aren't supported by the statutory language. *See, e.g., Nasca v. J.P. Morgan Chase Bank, N.A.*, 2007 WL 678407, at *3-4 (March 5, 2007, S.D.N.Y.).

            ii.       *Absence of judicial or administrative guidance*

Defendant designed and implemented the mailer in early 2004 and, at that time, there was a relatively limited and somewhat inconsistent universe of authority on this subject. Defendant overstates the matter in asserting that *no* legal authority existed at the time; as Plaintiff points out, at the time of the mailing Defendant could have drawn upon a circuit court ruling and an administrative commentary, both of which contained *Cole*-like language suggesting that a mere promotion would not be sufficient for FCRA purposes. *See* Pl.'s Resp. at 4 (citing *Trans Union Corp. v. FTC*, 267 F.3d 1138, 1142-43 (D.C. Cir. 2001); Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18804 at 18807 (May 4, 1990) (to be codified at 16 C.F.R. pt. 600).

However, while to some extent this supplies the "guidance from the courts of appeals or the Federal Trade Commission" that the Supreme Court found lacking in *Safeco*, it nonetheless does not provide objective clarity on the question of what constitutes a firm offer. The *Trans Union* opinion represented only a single appellate court on this issue, and the language cited by Plaintiff amounts to the relatively opaque advice that mailers should be more like "guaranteed offers of credit" and less like "catalogs and sales pitches." *See Trans Union*, 267 F.3d at 1142-43. Similarly, while the FTC statement precludes the sending of mere "promotional material" on a similar rationale as that which was later used in *Cole*, this commentary comes from an

administrative body whose authority on the subject was expressly limited by the Supreme Court. *See Safeco*, 551 F.3d at 20 (stating that the FTC "has only enforcement responsibility, not substantive rulemaking authority, for the provisions in question, *see* 15 U.S.C. §§1681s(a)(1), (e)").

Also, as Defendant points out there were opinions at the time that appeared to favor Defendant's looser interpretation of the requirement. *See* Def.'s Recons. Mot. at 6 (citing *Sampson v. Western Sierra Acceptance Corp.*, 2003 WL 21785612 (Aug. 1, 2003, N.D. Ill.) (finding that although "[t]he certificate fails to specify the amount of credit or *any* other terms of the credit, such as the interest rate" dismissal was nonetheless appropriate because the plaintiffs "[did] do not allege that defendants failed to honor the offer of credit"), amended on recons. by *Sampson v. Ridge Chrysler/Plymouth LLC*, 2005 WL 78958 (N.D. Ill. Jan 13, 2005); and *Tucker v. Olympia Dodge of Countryside, Inc.*, 2003 WL 21230604, at *3-*4 (May 28, 2003, N.D. Ill. 2003) ("FCRA does not condition the validity of a 'firm offer of credit' upon its inclusion of certain terms, such as a rate of interest. Instead 'firm offer' is defined in terms of a creditor's own undisclosed, predetermined criteria.")).

Plaintiff tries to downplay the significance of these opinions. She argues that they are only other district courts and are therefore not binding or authoritative. *See* Pl.'s Resp. at 9 ("[In Safeco] District Court opinions are not mentioned; this is an extension of the concept that District Court opinions are not binding, whereas the decisions from Courts of Appeals are."). However, the Supreme Court did use a district court opinion – that of the lower court that tried *Safeco* itself – in finding support for the reasonableness of that defendant's interpretation of FCRA. *Safeco*, 551 U.S. at 20 (finding that the defendant's view was bolstered by "a

administrative body whose authority on the subject was expressly limited by the Supreme Court. *See Safeco*, 551 F.3d at 20 (stating that the FTC "has only enforcement responsibility, not substantive rulemaking authority, for the provisions in question, *see* 15 U.S.C. §§1681s(a)(1), (e)").

Also, as Defendant points out there were opinions at the time that appeared to favor Defendant's looser interpretation of the requirement. *See* Def.'s Recons. Mot. at 6 (citing *Sampson v. Western Sierra Acceptance Corp.*, 2003 WL 21785612 (Aug. 1, 2003, N.D. Ill.) (finding that although "[t]he certificate fails to specify the amount of credit or *any* other terms of the credit, such as the interest rate" dismissal was nonetheless appropriate because the plaintiffs "[did] do not allege that defendants failed to honor the offer of credit"), amended on recons. by *Sampson v. Ridge Chrysler/Plymouth LLC*, 2005 WL 78958 (N.D. Ill. Jan 13, 2005); and *Tucker v. Olympia Dodge of Countryside, Inc.*, 2003 WL 21230604, at *3-*4 (May 28, 2003, N.D. Ill. 2003) ("FCRA does not condition the validity of a 'firm offer of credit' upon its inclusion of certain terms, such as a rate of interest. Instead 'firm offer' is defined in terms of a creditor's own undisclosed, predetermined criteria.")).

Plaintiff tries to downplay the significance of these opinions. She argues that they are only other district courts and are therefore not binding or authoritative. *See* Pl.'s Resp. at 9 ("[In Safeco] District Court opinions are not mentioned; this is an extension of the concept that District Court opinions are not binding, whereas the decisions from Courts of Appeals are."). However, the Supreme Court did use a district court opinion – that of the lower court that tried *Safeco* itself – in finding support for the reasonableness of that defendant's interpretation of FCRA. *Safeco*, 551 U.S. at 20 (finding that the defendant's view was bolstered by "a

administrative body whose authority on the subject was expressly limited by the Supreme Court. *See Safeco*, 551 F.3d at 20 (stating that the FTC "has only enforcement responsibility, not substantive rulemaking authority, for the provisions in question, *see* 15 U.S.C. §§1681s(a)(1), (e)").

Also, as Defendant points out there were opinions at the time that appeared to favor Defendant's looser interpretation of the requirement. *See* Def.'s Recons. Mot. at 6 (citing *Sampson v. Western Sierra Acceptance Corp.*, 2003 WL 21785612 (Aug. 1, 2003, N.D. Ill.) (finding that although "[t]he certificate fails to specify the amount of credit or *any* other terms of the credit, such as the interest rate" dismissal was nonetheless appropriate because the plaintiffs "[did] do not allege that defendants failed to honor the offer of credit"), amended on recons. by *Sampson v. Ridge Chrysler/Plymouth LLC*, 2005 WL 78958 (N.D. Ill. Jan 13, 2005); and *Tucker v. Olympia Dodge of Countryside, Inc.*, 2003 WL 21230604, at *3-*4 (May 28, 2003, N.D. Ill. 2003) ("FCRA does not condition the validity of a 'firm offer of credit' upon its inclusion of certain terms, such as a rate of interest. Instead 'firm offer' is defined in terms of a creditor's own undisclosed, predetermined criteria.")).

Plaintiff tries to downplay the significance of these opinions. She argues that they are only other district courts and are therefore not binding or authoritative. *See* Pl.'s Resp. at 9 ("[In Safeco] District Court opinions are not mentioned; this is an extension of the concept that District Court opinions are not binding, whereas the decisions from Courts of Appeals are."). However, the Supreme Court did use a district court opinion – that of the lower court that tried *Safeco* itself – in finding support for the reasonableness of that defendant's interpretation of FCRA. *Safeco*, 551 U.S. at 20 (finding that the defendant's view was bolstered by "a

sufficiently convincing justification to have persuaded the District Court to adopt it and rule in Safeco's favor"). Likewise, while Defendant's ability to find *some* opinions that seem to agree with its interpretation would appear to be mere cherry picking, in light of the importance *Safeco* placed on judicial agreement as proof of reasonableness, *see infra* sec. iii, the fact that at least some judges faced with similar facts found in favor of Defendant's view argues against a finding of recklessness.

For this reason, while it cannot be said that the instant matter involves the same "dearth of guidance" as was found in *Safeco*, it nonetheless cannot be said that the legal rules were "clearly established." *See Safeco*, 551 U.S. at 20 (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Therefore, this factor also supports a finding that Defendant was not "objectively unreasonable" in its interpretation of FCRA's requirements.

### iii. Likelihood that Defendant's interpretation would convince a court

The Supreme Court placed significant weight on the fact that a court might have favored a party's interpretation of FCRA as proof that the interpretation was not reckless. *See, e.g., Safeco*, 551 U.S. at 20; 21, n. 20 ("[I]t would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator. Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts..."). This Court will therefore consider whether courts have favored similar interpretations to that which was adopted by Defendant.

This Court does not have the advantage of looking to a lower court's ruling as in *Safeco*, which allowed the Supreme Court to look at how the very same set of facts had been ruled on by a court. However, as Plaintiff urges us to do, it is not unreasonable to satisfy this factor of the

*Safeco* analysis by considering how other courts have treated Defendant's interpretation of the "firm offer" requirement, to help determine the objective reasonableness of the approach. As Defendant points out, some subsequent decisions applied a very loose standard to the terms required of a firm offer under FCRA, rejecting arguments that there were too many conditions and insufficient terms. *See, e.g., Soroka v. JP Morgan Chase & Co.*, 2007 WL 895249, at *4 (March 19, 2007, S.D.N.Y.); *Nasca*, 2007 WL 678407, at *3-4 (expressly rejecting *Cole*); *Soroka v. Homeowners Loan Corp.*, 2006 WL 4031347, at *5 (June 12, 2006, M.D. Fla.) ("While the terms were not disclosed on the face of the offer, the material terms were ascertainable with minimal effort."); *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833 (5th Cir. 2004) ("[F]irm offer of credit really means a firm offer if you meet certain criteria").

Therefore, it appears that the interpretation of "firm offer" used by Defendant has been accepted by other courts. In light of this, and the other factors drawn from the Supreme Court's ruling in *Safeco*, this Court finds that Defendant's interpretation of FCRA's "firm offer" requirement was not objectively unreasonable.

      *iv.*  *Additional factors not considered in* Safeco

The memoranda of both parties address additional matters that were largely considered in this Court's previous summary judgment opinion. *See generally*, Def.'s Recons. Mem. (discussing defense witness credibility and Defendant's intent); Pl.'s Resp. (alleging evidence of bad faith, such as Defendant's failure to provide FCRA's required 'clear and conspicuous disclosures and the fact that Defendant continued to use an identical mailer post-*Cole*). However, these matters focus on the subjective factors surrounding the situation in which Defendant interpreted FCRA. While some of these factors have appeared compelling to this

-11-

Court in the past, in light of this Court's finding above that GMACM's interpretation was not "objectively unreasonable" there is no need to move beyond the limited factors considered in *Safeco*. *See, e.g., Safeco*, 551 U.S. at 19-20; 21, n. 20 (declining to consider defendant's alleged bad faith, finding that where a defendant has "followed an interpretation that could reasonably have found support in the courts," a party's "subjective intent" is irrelevant).

**4.     ANALYSIS OF "CLEAR AND CONSPICUOUS" REQUIREMENT**

In its previous summary judgment opinion, this Court found that "in light of this Court's ruling that Defendant failed to meet the requirements of a 'firm offer' under FCRA, Plaintiff has no additional claim under section 1681m." *See* Summ. J. Op. at 23. While this Court has reconsidered the possibility of GMACM's actions being interpreted as "willful," there is no reason to alter the previous finding that there was no firm offer contained in that document. Therefore, there is also no need for this Court to reconsider the failure of Plaintiff's claim under section 1681m.

**5.     ANALYSIS OF INTERLOCUTORY APPEAL**

Defendant has moved for immediate appeal on a single issue: "Can a defendant be found to have willfully violated a statute where the acts or omissions purportedly constituting the violation were not defined as a violation of the statute when the defendant engaged in the conduct in question?" However, as summary judgment is now appropriate, Defendant's motion for immediate appeal is moot.

**6.     CLASS CERTIFICATION**

This Court granted Defendant's motion to certify a class under Federal Rule 23 on April 10, 2007. The parties have so far been unable to produce a list of potential class members, much

less provide them with notice. *See* Status Report of July 10, 2007 (Doc. No. 216) (describing ongoing efforts to produce mailing list). Therefore, to the extent that non-representative class members have not been made aware of this action prior to termination of the case, the intended class is invalid. *See Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir. 1995) (holding that under Fed. R. Civ. P. 23(c)(2), 23(b)(3) class members must receive reasonable notice and the opportunity to opt out as an "absolute requirement for a court to exercise jurisdiction over the class members") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)); *see also Schrader v. Selective Serv. Sys. Local Board No. 76 of Wisconsin et al.*, 470 F.2d 73, 75 (7th Cir. 1972) (ruling that failure to provide necessary notice invalidates the class). This Court's order certifying the class is therefore vacated and held for naught.

**7. CONCLUSION**

For the foregoing reasons, Defendant's motion for reconsideration is GRANTED, and its motion for immediate appeal is DISMISSED as moot. Its amended motion for summary judgment – previously denied in part and granted in part – is now GRANTED. Class certification is invalid.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **July 23, 2007**